**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

GINNIE WEBB,

                 Plaintiff,

v.                                CIVIL ACTION NO. 3:09-0082

CHRISTY SHAFFER and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                 Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross-motions for summary judgment on the underinsured motorist coverage issue. For the following reasons, the Court **GRANTS** the defendant's motion (Doc. 29) and **DENIES** the plaintiff's motion (Doc. 36).

**Background**

Ginnie Webb, the plaintiff in this action, was driving a 2000 Chevrolet Malibu ("the 2000 Malibu") owned by her grandfather, Robert Kilgore, on or about December 25, 2006, when the Malibu collided with an automobile operated by Christy Shaffer. It is undisputed that (1) Ms. Shaffer's vehicle was insured by Nationwide Mutual Insurance Company ("Nationwide"), and (2) Ms. Webb settled her claim against Ms. Shaffer, receiving $50,000, the liability limits of Nationwide's automobile liability policy. At the time of the accident, the Malibu driven by the plaintiff was insured under State Farm Mutual Automobile Insurance Company ("State Farm") policy 37 6646-D03-48A ("Policy 37"), which was issued to the plaintiff's grandfather, Mr. Kilgore,

on October 3, 2005.  Policy 37 did not contain underinsured motorist coverage.[1]

Following the accident between Ms. Webb and Ms. Shaffer, the plaintiff filed a complaint against Ms. Shaffer on or about September 25, 2008, in the Circuit Court of Cabell County, West Virginia.  On December 29, 2008, the plaintiff filed an amended complaint in the Circuit Court of Cabell County against Ms. Shaffer and State Farm.  On January 30, 2009, State Farm removed the action to this Court.

In her complaint and subsequent motion for summary judgment, Ms. Webb alleges that State Farm failed,  as required by West Virginia law, to make a commercially reasonable offer of underinsured motorist coverage for the 2000 Malibu.  Consequently, the plaintiff requests the Court reform Policy 37 and add underinsured motorist coverage in the amount of the policy's liability limits.  State Farm also moves for summary judgment on the underinsured motorist coverage issue, seeking a declaration that: (1) Robert Kilgore received a commercially reasonable offer of underinsured motorist coverage; (2) Mr. Kilgore knowing and intelligently rejected such coverage; and (3) Policy 37 does not, therefore, provide the plaintiff underinsured motorist coverage for the December 2006 accident.   Additionally, State Farm requests a declaration that, because no underinsured motorist coverage is available to the plaintiff, she cannot maintain her common law bad faith claim relevant to the underinsured motorist claim.

---

[1]In her motion, the plaintiff argues that Policy 37, by operation of law, should include underinsured motorist coverage because of a technical and/or procedural error in State Farm's offer of underinsured motorist coverage and/or because Mr. Kilgore's denial of such coverage was not knowing and intelligent.  Nonetheless, it is clear from the policy documents submitted to the Court that the policy, as written, does not contain underinsured motorist coverage.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.  In other words, the availability of summary judgment turns on whether a proper jury question exists in a pending case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970).

In considering a motion for summary judgment, the Court draws any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  The Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)*.*  Nonetheless, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson*, 477 U.S. at 256, and, if the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element, then summary judgment will be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The nonmovant must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

"When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issue of material fact." *Monumental Paving & Excavating, Inc. V. Penn. Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).  The court must review each motion separately, on its own merits, and determine whether

-3-

either party deserves judgment as a matter of law.  *Id.*; *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion."  *Rossignol*, 316 F.3d at 523 (internal quotations omitted).

## Analysis

Here, the relevant law is not in dispute.  West Virginia Code § 33-6-31(b) requires that every automobile policy issued or delivered in the State "shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured."  *W. Va. Code § 33-6-31(b).*  In other words, by statute, every insurer issuing or delivering an automobile insurance policy in West Virginia is mandated to offer every insured the option of purchasing underinsured motorist coverage.

The requirement established in § 33-6-31(b) was examined by the West Virginia Supreme Court of Appeals in *Bias v. Nationwide Mutual Insurance Company*, 365 S.E.2d 789 (W. Va. 1987). There, the Supreme Court of Appeals answered two certified questions; one of which is relevant herein.  That question was: whether there was coverage by operation of the underinsured motorist provision of West Virginia Code § 33-6-31, when, following a serious bus accident, the bus owner's insurance did not cover all passenger damages.  *Id.* at 790.  The *Bias* Court answered the question in the affirmative, finding that the language of West Virginia Code § 33-6-31(b) "must be afforded a mandatory connotation."  *Id.*  The Court held: (1) "[w]here an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that

-4-

any rejection of said offer was knowing and informed[,]" *id.* at Syl. Pt. 1; and (2) "[such coverage] is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." *Id.* at Syl. Pt. 2.

### An Effective Offer

According to *Bias*, an effective offer of underinsured motorist coverage is an "offer [] made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision. The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." *Id.* at 791 (internal citations omitted). The West Virginia Legislature more fully explained the requirements for such an offer, in 1993, when it enacted West Virginia Code § 33-6-31d. Section 33-6-31d provides the: "Form for making offer of optional insured and underinsured coverage." *See W. Va. Code § 33-6-31d* (statutory heading). The statute states, in pertinent part:

> Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any and all of the coverage offered. *W. Va. Code § 33-6-31d(a).*

In July 2000, in accord with § 33-6-31d(a), the West Virginia Insurance Commissioner issued West Virginia Informational Letter No. 121. Informational Letter No. 121 contains the procedures and contents of the form an insurance agent making an offer of uninsured or underinsured motorist coverage must use. The Letter mandates "at a minimum the form must: 1. Inform a named insured of the optional coverages offered; 2. Inform the named insured of the rate

calculation for the optional coverages including amount of coverage and the number of vehicles; and

3. Give the named insured the option to reject the optional coverage." *See* Doc. 29-2, Ex. L, 2-3.

Further, with respect to the technical requirements for such an offer, the Letter requires:

### INSURER MUST COMPLETE UPPER PORTION OF BOTH PAGES OF FORM A OR FORM B FOR *EACH POLICY*

> Forms A and B each address uninsured (UM) coverage on the first page and underinsured (UIM) coverage on the second page of the respective form.  The insurer must complete the upper portion of Form A or Form B for each named insured notified in order to make an effective offer of optional UM and UIM coverages.  As to each named insured notified, the insurer must provide: 1) The number of vehicles covered by the policy; 2) Whether there is a multi-car discount used in the premium calculation; 3) The agent's name (if the insurer is a direct marketer and no agent is used, the insurer should type "none"); 4) The policy number; 5) The policy period (e.g. 3, 6 or 12 months); and 6) The premium amount for that policy period which would apply to each optional UIM and UM coverage offered by the insurer for which the named insured is eligible.  *Id.* at 4 (emphasis in original).

Finally, attached to Informational Letter No. 121, the Insurance Commissioner  provides sample forms for uninsured and underinsured motorist coverage offers.  *See id.*

The forms attached to Informational Letter No. 121 were in effect when Robert Kilgore obtained liability coverage, for the 2000 Malibu, on October 3, 2005.  *See* Doc. 29-2, Ex. L.  Thus, because the form used by State Farm to offer Robert Kilgore underinsured motorist coverage conformed with Informational Letter No. 121's Form A, *see id.*, it is evident that the form complied with the content requirements of § 33-6-31.  The only questions presented by the parties' cross-motions are, therefore: (1) whether the technical or other procedural errors State Farm made when fashioning the offer of underinsured motorist coverage to Mr. Kilgore, on October 3, 2005, rendered the offer ineffective, and (2) whether, in the case that the offer was effective, there is a genuine issue of material fact regarding whether Mr. Kilgore knowingly and intelligently rejected such offer.

**The Evidence Presented**

Attached to her motion for summary judgment and her subsequent pleadings, the plaintiff provides the following:

- A copy of the form used by State Farm to make the required offer of underinsured motorist coverage to Robert Kilgore, on October 3, 2005, which was provided to the plaintiff as part of a certified copy of Policy 37, on September 25, 2007.  The form is signed by Mr. Kilgore and dated October 3, 2005.  On the form, the lines labeled "Agent" and "Policy/Binder Number" appear blank and the information contained in the box at the top of the form (the "Date," "Applicant/Named Insured," "VIN #," and "Vehicle Description") is illegible.

- A copy of the form used by State Farm to make the required offer of uninsured motorist coverage to Robert Kilgore, on October 3, 2005, which was also provided to the plaintiff as part of a certified copy of Policy 37, on September 25, 2007.  This form is also signed and dated.   The "Agent" is listed as "J. Conley" and the "Policy/Binder Number" is identified as "48-1509-E62." The information contained in the box at the top of the form (the "Date," "Applicant/Named Insured," "VIN #," and "Vehicle Description") is illegible.

- A second copy of the form used by State Farm to make the required offer of underinsured motorist coverage to Robert Kilgore, on October 3, 2005.  On this form, the "Agent" is identified as "J. Conley" and the "Policy/Binder Number" as "48-1509-E62."  The information contained in the box at the top of the form (the "Date," "Applicant/Named Insured," "VIN #," and "Vehicle Description") is legible and indicates that the form was the offer made to Robert Kilgore, on October 3, 2005, with respect to the 2000 Malibu.

- A second copy of the form used by State Farm to make the offer of uninsured motorist coverage to Robert Kilgore, on October 3, 2005.  On this form, the "Agent" and the "Policy/Binder Number" are identified and the information contained in the box at the top of the form (the "Date," "Applicant/Named Insured," "VIN #," and "Vehicle Description") is legible.  This information indicates that the form was the offer made to Robert Kilgore, on October 3, 2005, with respect to the 2000 Malibu.

- A copy of a form used by State Farm to make an offer of uninsured motorist coverage to Robert Kilgore, for a 1989 Dodge, on October 16, 2000.  The form is signed and dated and all portions of the copy are filled out and legible.

- A copy of a form used by State Farm to make the required offer of underinsured motorist coverage to Robert Kilgore, for the 1989 Dodge, on October 16, 2000.  On the form, Mr. Kilgore accepts the optional underinsured motorist coverage offered.

The form is signed and dated and all portions of the copy are filled out and legible.

- A copy of a form used by State Farm to make an offer of uninsured motorist coverage to Robert Kilgore, for a 1997 Mercury Grand Marquis, on October 8, 2003. The form is signed and dated and all portions of the copy are filled out and legible.

- A copy of a form used by State Farm to make the required offer of underinsured motorist coverage to Robert Kilgore, for the 1997 Mercury Grand Marquis, on October 8, 2003. On this form, Mr. Kilgore rejects the optional coverage. The form is signed and dated and all portions of the copy are filled out and legible.

In addition to the above forms, the plaintiff submitted an affidavit by Robert Kilgore, signed and dated July 21, 2009. In the affidavit, Mr. Kilgore attests: "I was not specifically offered, nor did I knowingly and intelligently reject, underinsured motorist coverage for the insurance purchased on October 3, 2005. I believed I had purchased underinsured motorist coverage when purchasing the insurance on October 3, 2005." *Kilgore Affidavit* (Doc. 36-5), ¶¶ 2 & 3.

Relying on the above-mentioned forms and affidavit, the plaintiff's argument is that she is entitled to summary judgment on the underinsured motorist issue because Robert Kilgore did not knowingly and intelligently waive underinsured motorist coverage, for the 2000 Malibu, on October 3, 2005. The plaintiff argues that Mr. Kilgore could not have effectively waived such coverage, because the form provided to Robert Kilgore on October 3, 2005, did not contain the exact information required by § 33-6-31d and Informational Letter No. 121, and, as a result, the offer of underinsured motorist coverage was ineffective. *See Pl.'s Mem. in Support* (Doc. 37), 3. The plaintiff's specific criticism of the form provided to Mr. Kilgore, on October 3, 2005, is that it did not contain the Agent's name or the Policy/Binder Number, as required by Informational Letter No. 121.

The Court does not find the plaintiff's argument convincing. In this case, there is some dispute as to whether the forms the plaintiff supplied to the Court and refers to in her papers were

certified by State Farm during its discovery disclosures/responses.  Additionally, there is some dispute as to whether the Agent's name and the Policy/Binder Number were disingenuously added to the second copy of the offer form provided to the plaintiff, after the commencement of the litigation.  Nonetheless, neither of these allegations render the form offered to, and signed by, Mr. Kilgore ineffective, because, even when the facts are viewed in the light most favorable to the plaintiff and it is assumed that the form used to offer Robert Kilgore underinsured motorist coverage on October 3, 2005, did not contain the Agent's name or the Policy/Binder Number, the Court finds that the absence of such information was not a fatal defect.  As a result, the plaintiff has not established a genuine issue of material fact sufficient to withstand or obtain summary judgment.  *See Anderson*, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

### The Appropriate Standard and Its Application Here

To begin with, the standard by which an offer of underinsured motorist coverage is judged in West Virginia is governed by statute *and* case law.  As discussed, § 33-6-31d provides the general form for making such an offer and Information Letter No. 121 provides the explicit, technical requirements for the same.  However, both § 33-6-31d and Information Letter No. 121 serve to clarify the standard for an offer of underinsured motorist coverage mandated by § 33-6-31, which was first articulated in *Bias*, the case both parties agree is controlling.  Section 33-6-31d requires an underinsured motorist coverage offer "specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such

coverage available and the number of vehicles which will be subject to the coverage." *W. Va. Code § 33-6-31d(a)*. This command is consistent with the West Virginia Supreme Court of Appeals holding in *Bias*. 365 S.E.2d at 791 ("The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved."). Section § 33-6-31d further mandates that the requisite offer be made at the time the insured obtains liability coverage, in a manner prescribed by the State Insurance Commissioner, a requirement which is, again, consistent with the case law. *Id.* Informational Letter No. 121 is also consistent with *Bias* and the subsequent, related case law. This is because, although it provides substantial, technical detail regarding how an offer of underinsured motorist coverage should be made, the Letter does not alter the underlying qualitative standard by which an offer of underinsured motorist coverage must be judged.

In West Virginia, an offer of underinsured motorist coverage made pursuant to § 33-6-31 must be "commercially reasonable." *See, e.g, Bias*, 365 S.E.2d at 791; *Kalwar v. Liberty Mut. Ins. Co.*, 506 S.E.2d 39, 43 (W. Va. 1998) ("In *Bias* [], we held that the insurance carrier bears the burden of proving that a commercially reasonable offer of underinsured coverage was made to the consumer."); *Westfield Ins. Co. v. Bell,* 229 F.3d 1146, **2 (4th Cir. 2000) ("If the insurance carrier made a commercially reasonable offer of coverage in accord with *Bias* ... the policy holder does not have ... underinsured motorist coverage by operation of law.") (unpub. decision). A commercially reasonable offer is one that "provide[s] the insured with adequate information to make an intelligent decision." *See, e.g., Bias*, 365 S.E.2d at 791. As a result, the standard by which a rejection of such an offer is judged is knowingly and intelligently, *id.* at Syl. Pt. 1 ("Where an offer of optional coverage is required by statute, the insurer has the burden of proving that ... any rejection of said

-10-

offer was knowing and informed.");  Syl. Pt. 1, *Westfield Ins. Co. v. Bell*, 507 S.E.2d 406 (same), and a commercially reasonable offer may be one that does not perfectly conform to the technical requirements of § 33-6-31d or Information Letter No. 121.  *See Westfield Ins. Co.*, 229 F.3d 1146, ** 3 ("While the form is perhaps not letter-perfect, as [plaintiff's] expert suggests, the law does not require a "perfect" offer, but only one that is "commercially reasonable."); *Little v. Adkins*, No. 3:02-1064 (S.D. W.Va. August 29, 2003) (Goodwin, J.) ("Because the court holds that the plaintiff has waived his argument regarding the adequacy of the form, the court need not address the merits.  The court is quite skeptical, however, that the presence of an agent's identifying number rather than her name on the offer form ... would render this form inadequate to constitute a commercially reasonable offer of uninsured/underinsured motorist coverage.").  This is because the goal of § 33-6-31, as interpreted in *Bias*, is not to provide underinsured motorist coverage to all West Virginia drivers, but rather to provide all West Virginia drivers the opportunity to purchase such insurance, if they so desire.  *See, e.g., Riffle v. State Farm Mut. Auto. Ins. Co.*, 410 S.E.2d 413, 415 (W. Va. 1988) ("The purpose of W. Va.Code § 33-6-31 is to provide all insurance buyers with an opportunity to purchase a minimum amount of underinsured motorist coverage."); *Burrows v. Nationwide Mut. Ins. Co.*, 600 S.E.2d 565, 571 (W. Va. 2004) ("The statute and our decision in *Bias v. Nationwide Mut. Ins. Co.* [] encourage insurance companies to make a real effort to inform customers about the opportunity for underinsured motorist coverage."); *Id.* at 573 ("As we explained in *Riffle*, it is the *offering* of such coverage – the *opportunity* to purchase such coverage – that is mandated by the statute.") (emphasis in original).  Therefore, it is the overall content and quality of an offer for underinsured motorist coverage that matters, not its technical details.

Here, when making its offer of underinsured motorist coverage to Robert Kilgore, on

October 3, 2005, State Farm utilized a form consistent with Informational Letter No. 121.  The form was provided to Mr. Kilgore at the time he obtained liability coverage for the 2000 Malibu and it contained information on all levels and amounts of coverage available.  Accordingly, even assuming the form did not identify the Agent or Policy/Binder Number, it conformed to the letter and spirit of §§ 33-3-31 and 33-6-31d and was, consequently, commercially reasonable.[2]  *See Bias,* 365 S.E.2d at 791 ("The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved."); *W. Va. 33-6-31d(a)* (same); *see also Westfield Ins. Co.*, 229 F.3d 1146, ** 3 ("This form explained what underinsured motorist coverage is and how much it costs.  There can be no serious question that the offer was reasonable.").

Because the Court finds the required offer was commercially reasonable, the only remaining issue presented is whether, when viewed in the light most favorable to the plaintiff, there is a genuine issue of material fact with respect to whether Mr. Kilgore knowingly and intelligently rejected such offer.  The Court finds that there is not.  The only evidence the plaintiff provides to the contrary is Mr. Kilgore's affidavit, in which he attests that "[he] believed [he] had purchased underinsured motorist coverage when purchasing the insurance on October 3, 2005."  *Kilgore Affidavit* (Doc. 36-5), ¶ 3."  In light of the other evidence presented, the Court finds this affidavit is not sufficient to create a triable issue.  First and foremost, all of the forms submitted by the parties and represented to be the underinsured motorist offer form presented to Mr. Kilgore on October 3,

---

[2]The evidence presented indicates that Mr. Kilgore was a long-time customer of State Farm and that John Conley was Mr. Kilgore's long-time insurance agent.  Further, the plaintiff presented no evidence to indicate that the relevant forms, which were signed by Mr. Kilgore and dated October 3, 2005, did not pertain to Policy 37 or the Malibu 2000.  Accordingly, the Court finds that the fact that the form may not have identified Mr. Conley as the relevant insurance agent, or included the Policy/Binder Number, does not present a genuine issue of material fact regarding the commercial reasonableness of the offer.

2005, are signed and the box labeled "Reject" is checked. Viewed alone, these forms present substantial, concrete evidence that Mr. Kilgore knowingly and intelligently rejected such coverage at that time. There is additional evidence, however. The declarations page for Policy 37 does not include underinsured motorist coverage or any premium for such coverage. Moreover, the other offer forms for uninsured/underinsured motorist coverage submitted to the Court, where Mr. Kilgore, at one point, accepts and, at other times, rejects underinsured motorist coverage, demonstrate his familiarity with such coverages and with the forms used to offer them. As a result, taken together, this evidence convinces the Court that Mr. Kilgore's rejection of underinsured motorist coverage, on October 3, 2005, was knowing and intelligent.

### Conclusion

The plaintiff has not established a genuine issue of material fact regarding the underinsured motorist coverage issue and her motion for summary judgment is, accordingly, **DENIED** insofar as it pertains to such coverage. The defendant's motion is **GRANTED** with respect to the same. Additionally, because the Court finds that plaintiff has not established a right to underinsured motorist coverage, the Court **GRANTS** summary judgment to State Farm with respect to the plaintiff's claims: (1) that State Farm acted in bad faith with regard to her underinsured motorist coverage, and (2) that State Farm's conduct with regard to the plaintiff's right to underinsured motorist coverage amounted to intentional malicious disregard.

-13-

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 9, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE